REISSUED FOR PUBLICATION
JAN 9 2018
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 14-1187V
Filed: December 15, 2017
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROBERT MADIGAN, | |
| Petitioner, | |
| v. | Interim attorneys' fees and costs decision; respondent defers to Special Master's discretion |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Diana L. Stadelnikas, Sarasota, FL, for petitioner.
Christine M. Becer, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 21, 2017, petitioner filed a motion for interim payment of attorneys' fees and reimbursement of case costs, requesting attorneys' fees of $29,316.20 and attorneys' costs of $4,258.42, for a total request of $33,574.62. No decision on entitlement has been issued.

For the reasons set forth below, the undersigned awards petitioner $29,092.48 in interim attorneys' fees and costs incurred up to and including November 21, 2017.

### PROCEDURAL HISTORY

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

On December 10, 2014, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that he suffered unilateral hearing loss as a result of his December 9, 2011 receipt of the influenza ("flu") vaccine. Pet. at 1.

On March 11, 2016, the undersigned *sua sponte* removed petitioner's former counsel Mr. Schlesinger as his attorney since Mr. Schlesinger resigned from the bar of New York State on June 10, 2015. On April 25, 2016, petitioner filed a motion to substitute attorney and the court added Ms. Diana L. Stadelnikas as his attorney of record on the same day.

On May 18, 2017, petitioner filed the expert report from Dr. Barry S. Erner, an osteopath, who has been his treating doctor since 2011. Ex. 14 at 1. He opined that flu vaccine and a viral infection caused petitioner's hearing loss, causing stress and an inflammatory response. Id. at 2.

During a status conference held on August 24, 2017, the undersigned ordered petitioner to file a supplemental expert report from Dr. Erner providing more information about his theory of how flu vaccine leads to sudden sensorineural hearing loss.

On October 25, 2017, Ms. Stadelnikas filed a motion to withdraw with a stay on the ruling for a 60-day period to permit petitioner time to obtain new counsel. On October 26, 2017, the undersigned granted the motion and permitted Ms. Stadelnikas to remain as counsel until December 26, 2017.

On November 21, 2017, petitioner filed a motion for interim payment of attorneys' fees and reimbursement of case costs, requesting attorneys' fees of $29,316.20 and attorneys' costs of $4,258.42, for a total request of $33,574.62.

On December 5, 2017, respondent filed a response to petitioner's motion arguing petitioner has not identified a special showing to justify an award of interim fees and costs under the circumstances of this case, resp. at 2-4, and "the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs." Id. at 3. Respondent deferred to the undersigned to exercise her discretion to award interim fees and costs in this case. Id. at 5. On December 13, 2017, petitioner filed a reply to respondent's response. In his reply, petitioner argued that because counsel has filed a motion to withdraw with a stay, "[c]ounsel's ability to recover the fees and costs requested herein would be impeded, as well as cause an ongoing ethical dilemma, if she were forced to wait for the current case to conclude prior to receiving the fees and costs expended to date." Reply at 5.

The matter of petitioner's interim attorneys' fees and costs is now ripe for adjudication.

## DISCUSSION

I.  **Interim Fee Awards are Appropriate Under the Vaccine Act**

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The

Federal Circuit again found interim fee awards appropriate under the Vaccine Act in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372 (Fed. Cir. 2010).

### A. Interim Fees are Appropriate in This Case

In Avera, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants sought only higher fees after dismissal of their case. 515 F.3d at 1352. The Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." Id.

Respondent raised objections to petitioner's interim attorneys' fees and costs application in his response. However, respondent deferred to the undersigned to exercise her discretion to award interim fees and costs in this case.

#### 1. Good Faith & Reasonable Basis

Petitioner is entitled to a presumption of good faith. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is met.

Dr. Erner, petitioner's treating doctor since 2011, opined that flu vaccine and a viral infection caused petitioner's hearing loss, causing stress and an inflammatory response. Because this case appears to have a reasonable basis, the undersigned awards interim attorneys' fees and costs.

#### 2. Protracted Proceedings

Additionally, interim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner. Petitioner's case has been pending for over three years. Thus, the undersigned finds an award of interim fees and costs appropriate at this juncture in the case.

### II.  Reasonableness of Requested Attorneys' Fees and Costs

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Avera, 515 F.3d 1343, 1348. This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing Avera, 515 F. 3d at 1349). For cases in which forum rates apply, McCulloch provides the framework for determining the appropriate hourly

rate range for attorneys' fees based upon the attorneys' experience.  See McCulloch v.Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation."  Avera, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id.  Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).  A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

In his motion, petitioner requests a total of $33,574.62, comprised of $29,316.20 for attorneys' fees and $4,258.42 for attorneys' costs, incurred by Maglio Christopher & Toale, PA.  The undersigned finds the hourly rates requested for counsel and paralegals are reasonable.  However, some billing entries are uncompensable.

1. **Reduction of Billable Hours**

   a. **Clerical Tasks**

It is firmly rooted that billing for clerical and other secretarial work is not permitted in the Vaccine Program.  Rochester v. United States, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of HHS, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Petitioner's counsel's billing records contain multiple entries that are best characterized as administrative tasks, such as reviewing invoices and scheduling meetings.  For instance, counsel and paralegals billed hours to obtain, review, process invoice for medical records and expert expenses.  Ex. 50 (entries dated 2/24/2017; 10/31/2017; 11/08/2017).  Throughout the billing invoices, counsel and paralegals billed 0.1 to 0.2 hours for "calendar telephone conference", "calendar deadlines", and "review electronic notice and update the file accordingly" after reviewing a one-page court order or scheduling a conference.  Ex. 50 (entries dated 5/10/2016; 5/12/2016; 7/11/2016; 8/10/2016; 8/16/2016; 8/17/2016; 11/15/2016; 1/17/2017; 3/21/2017; 5/17/2017; 5/22/2017; 6/12/2017; 6/13/2017; 6/15/2017; 8/15/2017; 8/16/2017; 8/24/2017; 9/26/2017; 10/26/2017).  Additionally, on February 15, 2017, counsel billed a combined 1.5 hours for "speaking with an office manager to schedule a conference call" and

"leaving a voice mail." Beyond the fact that this is clerical work billed at counsel's and paralegals' rates, the undersigned cannot imagine how it takes six to twelve minutes to enter a date, or even three dates, on one's calendar, or ninety minutes to set up conference calls. These types of entries are clerical in nature and do not constitute billable time. Accordingly such entries will be deducted from the fee award, amounting to a **reduction of $1359.80.**

### b. Duplicative and Vague Billing Entries

The undersigned has previously decreased an award of attorneys' fees for vagueness. Barry v. Sec'y of HHS, 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reduced a fee award by 10 percent due to vague billing entries). An application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of HHS, 18 Cl.Ct. 751, 760 (1989); Rodriguez v. Sec'y of HHS, 2009 WL 2568468 (Fed. Cl. Spec. Mast. June 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. Id. at *8.

After reviewing the billing records, the undersigned finds that petitioner's counsel and paralegals included entries that are so vague that they do not provide enough information to determine whether the task is compensable. Several of the entries are simply for a review of the file and/or a discussion with an attorney, but do not explain for what purpose the file needed to be reviewed and discussed so frequently. It is difficult to comprehend why counsel and paralegals billed for a general review of the case file when they were actively involved in the case. Ex. 50 (entries dated 4/11/2016; 4/26/2016; 6/6/2016; 6/10/2016; 8/10/2016; 9/19/2016; 12/9/2016; 1/16/2017; 2/24/2017; 4/7/2017; 10/19/2017). The total amount of the **reduction equals $363.00.**

### c. Excessive Billing

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. See Ericzon v. Sec'y of HHS, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016). Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See Sabella, 86 Fed. Cl. at 209. It is reasonable to reduce the fees paid to petitioner due to excessive client and intra-office communication. See Panaitescu v. Sec'y HHS, No. 16-753V, 2017 WL 4876035 (Fed. Cl. Spec. Mstr. Oct. 2, 2017) (reduced counsel's overall fee award due to billing for excessive email correspondence with the client and with each other); See also Carter v. Sec'y HHS, No. 04-1500V, 2017 WL 224187, at *6-7 (Fed. Cl. Spec. Mstr. July 13, 2007) (reduced counsel's billable hours for an excessive amount of communication with their client).

After carefully reviewing the billing records, the undersigned finds that counsel billed for

excessive communication with petitioner and doctors. Counsel billed a combined 13.1 hours[2] and 7.4 hours[3] of her total 65.5 hours spent on the case for emails and telephone calls with petitioner and doctors, respectively. Some telephonic conferences are overly lengthy. For example, on May 5, 2016, counsel billed 1.8 hours for a telephonic conference with petitioner. Ex. 50, at 2. On July 11, 2016, counsel billed 1.5 hours for updating case status on phone. Id. at 3. On September 22, 2016, counsel billed 0.8 hours for a telephonic conference with petitioner. Id. at 4. On January 12, 2017, counsel billed 1.3 hours for a conference with petitioner. Id. On February 16, 2017, counsel billed 1.5 hours for a telephonic conference with petitioner's treating physician. Id. at 7. While the undersigned acknowledges that the communication with petitioner and doctors is an important aspect of representation, the number of emails and phone calls and the length of some conferences are excessive in this case and far exceeds what the undersigned normally sees in billing records. Additionally, counsel billed 6.8 hours for researching potential experts. Ex. 50, at 4 (entries dated 9/22/2016; 12/1/2016; 12/7/2016; 1/10/2017; 1/13/2017).

Due to the volume of excessive and duplicative entries, the undersigned further reduces petitioner's requested fees by ten percent. See Willett v. Sec'y of HHS, No. 15-252V, 2017 WL 3298983, at *4 (Fed. Cl. Spec. Mstr. June 2, 2017) (reducing fee award by 20 percent); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323, at *18 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing fee award by 20 percent); see also Wasson v. Sec'y of HHS, 24 Cl. Ct. 482, 484 (Fed. Cl. 1991) (a line-by-line evaluation is not required in determining a reasonable number of hours expended), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). This adjustment results in a **further deduction of $2,759.34.**

Thus, the total amount of attorneys' fees for Maglio Christopher & Toale, PA is reduced by $4,482.14 and $24,834.06 is awarded. The undersigned finds the attorneys' costs reasonable. Therefore, the total amount paid for attorneys' fees and costs incurred by Maglio Christopher & Toale, PA is **$29,092.48.**

## CONCLUSION

The undersigned finds an award of interim attorneys' fees and costs appropriate. She also finds that the majority of petitioner's interim attorneys' fees and costs request is reasonable. **Accordingly, the court awards: $29,092.48**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Maglio Christopher & Toale, PA in the amount of **$29,092.48.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of

---

[2] Ex. 50 (entries dated 5/2/2016; 5/5/2016; 5/11/2016; 7/11/2016; 7/12/2016; 8/17/2016; 8/18/2016; 9/14/2016; 9/15/2016; 9/22/2016; 1/12/2017; 1/17/2017; 1/18/2017; 3/21/2017; 3/27/2017/ 3/28/2017; 5/8/2017; 5/12/2017; 5/16/2017; 8/24/2017; 8/28/2017; 8/31/2017; 9/1/2017; 9/6/2017; 9/8/2017; 9/22/2017; 9/25/2017).

[3] Ex. 50 (entries dated 2/1/2017; 2/6/2017; 2/16/2017; 2/17/2017; 2/21/2017; 2/22/2017; 3/20/2017; 3/27/2017; 5/11/2017; 5/15/2017; 5/16/2017; 8/24/2017; 9/5/2017; 9/6/207; 9/18/2017; 9/25/2017).

the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

Dated: December 15, 2017

s/ Laura D. Millman
Laura D. Millman
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.