# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 14-1187V**
**Filed: April 1, 2021**
UNPUBLISHED

| | |
|---|---|
| ROBERT MADIGAN, | Special Master Horner |
| Petitioner, | |
| v. | Interim Attorneys' Fees and Costs Decision; Expert Costs; Reasonable Hourly Rate |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Andrew Donald Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.*
*Christine Mary Becer, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 15, 2021, petitioner moved for an award of interim attorneys' fees and costs in the amount of $122,141.44.  (ECF No. 117.)  In response, respondent deferred to the special master regarding both the amount and appropriateness of an award of interim attorneys' fees and costs.  (ECF No. 121.)  For the reasons discussed below, I award petitioner interim attorneys' fees and costs in reduced amount of $106,685.94.

## I.    Procedural History

On December 10, 2014, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012),[2] alleging that influenza vaccine

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

that petitioner received on December 9, 2011 caused him to suffer unilateral hearing loss in his left ear.  (ECF No. 1.)

This case was originally assigned to Special Master Millman.  (ECF No. 4.) Petitioner subsequently filed medical records to support his claim.  (ECF Nos. 11-20.) Petitioner then filed an expert report from one of his treating physicians, Barry S. Erner, D.O.  (ECF No. 46; Ex. 14.)  Respondent filed his Rule 4 report, recommending against compensation and an expert report from Kenneth H. Fife, M.D.  (ECF Nos. 52-53.)

On December 26, 2017, Diana L. Stadelnikas withdrew as attorney from this case.  (ECF No. 72.)  Special Master Millman granted petitioner's motion for interim attorneys' fees and costs and awarded interim attorneys' fees and costs to petitioner's prior counsel.  (ECF No. 68.)  On June 28, 20218, Andrew Downing, substituted as counsel.  (ECF No. 78.)

Petitioner then filed an expert report from otolaryngologist, George W. Hicks, M.D.  (ECF No. 80; Ex. 50.)  Subsequently, the parties filed supplemental expert reports from Drs. Fife and Hicks.  (ECF Nos. 81, 82, 86.)

This case was reassigned to my docket on June 7, 2019.  (ECF No. 89.)  A two-day entitlement hearing was held on April 20 and 21, 2020.  Petitioner testified first, followed by his wife, Teresa Madigan.  Petitioner also presented expert testimony from Dr. Hicks and treating physician testimony by Dr. Nicora.  Respondent presented expert testimony by Dr. Fife.

Petitioner filed the instant motion for interim attorneys' fees and costs on February 15, 2021, respondent filed his response on March 1, 2021, and petitioner did not file a reply.  (ECF Nos. 117, 121.)  Accordingly, petitioner's motion for interim attorneys' fees and costs is now ripe for resolution.

## II.    An Award of Interim Attorneys' Fees and Costs is Appropriate

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Respondent has chosen not to challenge petitioner's good faith and reasonable basis for filing this claim.  (ECF No. 121.)  Moreover, a prior award of interim attorneys' fees and costs was granted, where Special Master Millman found that this petition was brought in good faith and petitioner had reasonable basis to pursue his claim.  (ECF No. 68, p. 3.)  I agree.

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352.  In *Avera*, the Federal

Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Id*. In denying an interim fee award, the *Avera* court reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." *Id*. In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.

Here, petitioner's request for interim attorneys' fees and costs is made after about three years of litigation since Mr. Downing substituted as counsel, after an entitlement hearing, and after petitioner incurred costs for providing expert reports and expert testimony to support his claim. Accordingly, I find that petitioner's request for an award for interim attorneys' fees and costs is reasonable at this juncture.

### III.   Reasonableness of the Requested Award

#### a. Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. This is a two-step process. *Id*. at 1347-48. First, a court determines an "initial estimate…by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"[3] *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id*. at 1348.

In this case, petitioner is seeking $75,682.00 in interim attorneys' fees for work performed in 2018 through 2021. I have reviewed the billing records submitted with petitioner's request, and in my experience, the hourly rates billed for 2017 through

---

[3] A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (citation and quotation omitted). The decision in *McCulloch* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motions for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Office of Special Masters has subsequently updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, 2019, 2020 and 2021 can be accessed online at http://www.cofc.uscourts.gov/node/2914.

2021[4] for attorney time and paralegal time are all reasonable and in accord with prior awards made by other special masters.

Turning next to the requested hours expended, special masters may rely on their experience within the Vaccine Program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *rev'd on other grounds and aff'd in relevant part*¸ 988 F.2d 131 (Fed. Cir. 1993).  Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).  In the Vaccine Program, secretarial work should be considered as normal overhead office costs and therefore, billing for clerical and other secretarial work is not permitted.  *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

Upon review of the billing records, I find that counsel included entries that are duplicative and excessive due to attorneys and paralegals billing for reviewing the same orders and attending the same status conferences/phone calls.  Moreover, Ms. Avery has been cautioned regarding her billing for non-substantive analysis of medical records.  *See Mulrenin v. Sec'y of Health & Human Servs.*, No. 18-22V, 2020 WL 7868230 (Fed. Cl. Spec. Mstr. Dec. 10, 2020).  This type of billing is seen here as well, resulting in a reduction in the overall interim fee award.[5]  Additionally, counsel also billed for clerical work where Mr. Downing billed 0.50 hours to compile and index materials for Dr. Hicks.  (ECF No. 117-1, p. 2.)  Mr. Downing also included a vague entry for "government shutdown, reopening; status of claims moving forward; timing," for 0.30 hours.  (*Id.* at 4.)  For duplicative entries, only hours billed by Mr. Downing, the lead attorney in this case, will be awarded.  These duplicative, clerical, and vague billing entries result in a reduction of **$1,705.50** of the interim fee award.[6]

---

[4] Counsel billed the same hourly rates for work performed in both 2020 and 2021, and thus I do not reach the question of counsel's rates for 2021. Significantly, the work performed in this case in 2021 was completed prior to publication of the 2021 Fee Schedule.

[5] For example, Ms. Avery billed for "analysis of medical records…to determine begin and end date…" on February 25, 2020, February 26, 2020, March 3, 2020, and March 18, 2020.  This list is not exhaustive.

[6] For example, there were duplicative entries billed by Courtney Van Cott on July 12, 2018, December 4, 2019, January 8, 2020, February 7, 2020, February 25, 2020, March 6, 2020, March 31, 2020, June 25, 2020, October 7, 2020, and January 21, 2021.  This list is not exhaustive.

**b. Interim Attorneys' Costs**

Attorneys' costs must be reasonable as well.  *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").  An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable.  *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). In this case, petitioner seeks $46,459.44 in interim attorneys' costs.  The majority of the expenses incurred were expert costs relating to Dr. Hicks's time preparing and appearing for the two-day hearing that was held on January 28 and 29, 2021.  (ECF No. 117-1, p. 42.)

Dr. Hicks billed petitioner at an hourly rate of $500.  Petitioner indicates that Dr. Hicks has over 40 years of experience in otolaryngology and neurotology, an area pertinent to the issue in this case.  Dr. Hicks also completed his residency in otolaryngology at Indiana University School of Medicine after obtaining his medical degree from St. Louis University School of Medicine.  Dr. Hicks is board-certified in otology and neurotology.  I found Dr. Hicks's expertise and testimony to be highly relevant and useful.  Therefore, given his expertise and experience relating to the issues in this case, an hourly rate of $500 is reasonable.  *See e.g.*, *Harper v. Sec'y of Health & Human Servs.*, No. 15-1188V, 2018 WL 6006030 (Fed. Cl. Spec. Mstr. Oct. 15, 2018) (awarding full expert costs for Dr. Edwin Monsell, an expert in otolaryngology who billed an hourly rate of $500.).[7]

However, turning next to the hours billed, a review of the billing records provided by Dr. Hicks showed that he spent 44 hours from October 28, 2020 to January 26, 2021 preparing for the hearing, including a breakdown of 15 hours for reviewing medical

---

[7] Many Vaccine Program cases provide a framework for determining the appropriate rate for experts in this program at a range between $250 and $500 an hour.  *See O'Neill v. Sec'y of Health & Human Servs.,* No. 08–243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs.*, No. 08–579V, 2014 WL 630473, at *8 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11–051V, 2013 WL 5229796, at *2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (approving a rate of $500 per hour for an expert in neurology and immunology and who also had expertise in a pertinent area to the issue in the case); *Chen Bou v. Sec'y of Health & Human Servs.,* No. 04-1329V, 2007 WL 924495, at *10, *16 (Fed. Cl. Spec. Mstr. Mar. 9, 2007) (awarding an expert a rate of $350 per hour based in part on his poor performance in testifying at hearing, but noting that "[b]ased upon the information submitted [ ], with the appropriate set of facts the undersigned would have no issue with awarding the $500 requested by petitioner")).  However, $500 per hour does not represent a ceiling.

records,[8] 17 hours for reviewing medical literature,[9] 7 hours of additional research,[10] and 5 hours of communication.  (ECF No. 117-1, p. 42.)  This results in billing of $22,000.00, which appears to be excessive.  (*Id.*)  Rather, for the reasons discussed in footnotes 8-10, Dr. Hicks's prehearing preparation billing is reduced from $22,000.00 to $12,250.00 ($2,500.00 + $6,375.00 +$875.00 + $2,500.00), **a reduction of $9,750.00** to the award of interim costs.

Additionally, Dr. Hicks billed 14 hours for the first day of the hearing despite the fact that the first day of the hearing lasted only 6.5 hours.  (ECF No. 117-1, p. 42.)  The 14 hours billed by Dr. Hicks amounts to $7,000.00, exactly matching the flat rate of $7,000.00 for a full day of hearing testimony identified in his retainer agreement.  (*Id.* at 32.)  Special masters have previously concluded that experts should not be awarded flat rates, especially for days spent travelling or at a hearing.  *See e.g.*, *Bean-Sasser v.*

---

[8] When Dr. Hicks initially reviewed petitioner's medical records, he did not charge by the hour, but identified petitioner's medical records as measuring three inches.  (ECF No. 117-1, p. 34.)  According to his retainer agreement, Dr. Hicks considers an inch of medical records to represent about 250 pages of medical records.  (*Id.* at 31.)  He typically charges $900 for the first half-inch, $1,300 for an inch, $1,700 for two inches, and $2,000.00 for three inches.  (*Id.*)  Thereafter, he charges $250 for each additional inch of records.  In this case, he identified petitioner's medical records as constituting 3 inches of records, but charged only $1,700.00 for their review, consistent with his rate for two inches of records.  (*Id.* at 34.)  It is impossible to know from this rate structure how much time Dr. Hicks actually spent initially reviewing the medical records; however, his invoice reflects that he billed 15 hours rereviewing the medical records at a rate of $500 per hour, resulting in a fee of $7,500.00.  (*Id.* at 42.)  Even accounting for the fact that petitioner subsequently filed additional updated records, it is not reasonable for Dr. Hicks's *rereview* of the medical records to cost more than four times the amount of his initial review of the same medical records.  In fact, upon my review, the additional medical records filed subsequent to Dr. Hick's initial review (some of which likely included duplication of previously filed records) amount to less than three inches by Dr. Hicks's metric, meaning that they should reflect only an additional $750 of billing based on the rates stated in his retainer.  Accordingly, these 15 hours of record review are reduced by two-thirds from $7,500.00 to $2,500.00.

[9] Of note, Dr. Hicks indicates in his billing statement that the literature is "both ours and Dr. Fife's addressing general and specific causation questions." (ECF No. 117-1, p. 42.)  However, Dr. Fife submitted only four articles supporting his opinion (ECF Nos. 81, 86) compared to 30 references submitted by Dr. Hicks (ECF Nos. 83-85).  Dr. Hicks previously billed two hours for rebuttal of Dr. Fife's opinion.  (*Id.* at 36.)  Accordingly, as a function of his expertise as well as the research he performed formulating his opinion in this case, Dr. Hicks should have already been familiar with the vast majority of the literature at issue.  I do note, however, that a significant amount of time elapsed between preparation of Dr. Hicks's initial report and his hearing testimony such that some rereview may have been appropriate.  Additionally, some literature was also filed by petitioner's prior exert, Dr. Erner.  Accordingly, a reduction of 25% is appropriate. This results in a reduction from $8,500.00 to $6,375.00.

[10] This was identified as "[a]dditional research for newly published journal articles on SSNHL since submission of my reports."  (ECF No. 117-1, p. 42.)  That Dr. Hicks took an opportunity to check for updated literature is not in itself problematic.  However, petitioner ultimately did not file any updated literature and 7 hours to confirm the absence of newly published research is excessive where Dr. Hicks spent only 12 hours initially researching his opinion.  (*Id.* at 34.)  An additional problem with this billing is that the total amount invoiced for these 44 hours reveals that Dr. Hicks billed this time at his full $500 per hour rate.  (ECF No. 117-1, p. 42.)  However, his retainer agreement identifies a separate research rate of $250 per hour.  (*Id.* at 31.)  Accordingly, these hours are reduced by 50% and the rate for the remaining hours is also reduced by 50%.  This results in a reduction from $3,500.00 to $875.

*Sec'y of Health & Human Servs.*, No. 13-326V, 2017 WL 485789 (Fed. Cl. Spec. Mstr. Sept. 8, 2017); *Gonzales v. Sec'y of Health & Human Servs.*, No. 91-905V, 1992 WL 92200 (Fed. Cl. Spec. Mstr. Apr. 10, 1992).  Accordingly, I will allow billing for the duration of the hearing itself (6.5 hours) along with a reasonable amount of time for pre-hearing preparation (1 hour) and post-hearing debriefing (1 hour) for a total of 8.5 hours. Additionally, Dr. Hicks billed six hours of time for the second day of the hearing whereas the hearing itself lasted only 1.5 hours that day.  (ECF No. 117-1, p. 42.)  As with the first day of the hearing, I will allow time billed for the duration of the hearing itself along with a reasonable amount of time for preparation and debrief (1 hour each), resulting in 3.5 hours of work for the second hearing day.  These adjustments result in **a reduction of $4,000.00** (from $10,000.00 to $6,000.00) to the award of interim costs.

Aside from the expert costs, the remaining costs were well-documented and shall be awarded in full.

## IV.    Conclusion

In light of the above, petitioner's motion for an award of interim attorneys' fees and costs is hereby **GRANTED.**  Petitioner is awarded $106,685.94, representing $73,976.50 in interim attorneys' fees and $32,709.44 in interim attorneys' costs. **Accordingly, I award a total of $106,685.94 as a lump sum in the form of a check payable to petitioner and his counsel, Andrew Donald Downing, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[11]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.